**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **CR-20-75-GF-BMM** |
| vs. | **ORDER** |
| LYNN BAPP TEMPEL, | |
| Defendant. | |

The Court sentenced Defendant Lynn Bapp Tempel ("Tempel") to fourteen months in federal custody for Wire Fraud. (Doc. 42.) The Court held a separate restitution hearing on May 24, 2022. (Doc. 45.) After discussion by the Court, witnesses' testimony and argument by the parties, **IT IS HEREBY ORDERED** that Tempel will pay restitution to the victim in the amount of $415,221.24. Criminal monetary payments shall be made to the Clerk, United States District Court, Missouri River Courthouse, 125 Central Avenue West, Suite 110, Great Falls, MT 59404.

**BACKGROUND**

The following facts are based on the Presentence Investigation Report and

testimony presented at the restitution hearing. (Docs. 41; 45.) Tempel managed the finances of her husband's construction company, William Tempel Construction. William Tempel Construction entered into a contract with Jane Doe in July 2013 to construct a multimillion-dollar home in Great Falls, Montana ("the Doe Project"). William Tempel Construction worked on the Doe Project from July 8, 2013, to December 12, 2017. Subcontractors who worked on the Doe Project submitted their invoices directly to William Tempel Construction. Tempel processed these subcontractor invoices and submitted inflated or false invoices to Jane Doe and kept the overbilled amounts for herself.

The Government calculates that Tempel owes Jane Doe $505,391.24 in restitution. (Doc. 49-1 at 888.) Tempel argues that her total restitution should be reduced to approximately $131,673.90 based on various offsets rejected by the Government. (Doc. 48-1 at 84.)

## BURDEN OF PROOF

The Mandatory Victims Restitution Act ("MVRA") entitles victims of fraud to restitution by the defendant. 18 U.S.C. §§ 3663A-3664. The Court must "order restitution to each victim in the full amount of each victim's losses as determined by the court[.]" 18 U.S.C. § 3664(f)(1)(A). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e).

2

Restitution compensates victims for their actual losses caused by a defendant's conduct. A court determines a victim's "actual loss" by "comparing what actually happened with what would have happened if the defendant had acted lawfully." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010). Restitution encompasses "the victim's actual losses that are a direct and proximate result of the defendant's offense[.]" *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016).

## ANALYSIS

The Government initially requested $519, 524.57 in restitution. (Doc. 44 at 2.) The Government arrived at this number by comparing 153 original subcontractor invoices to the inflated invoices Tempel submitted to Jane Doe. (Doc. 48-1 at 70.) Tempel urges several offsets that would dramatically decrease this amount. (Doc. 48-1 at 84.) Tempel argues that the invoices were not inflated to the extent that the Government claims. (Doc. 49-1 at 889–896.) The Government accepted a few of Tempel's proposed reductions and now requests $505,391.24. (Doc. 49-1 at 888.)

The Court agrees, for the most part, with the reasons cited by the Government for rejecting Tempel's other proposed reductions. (Doc. 49-1 at 888–896.) The Court determines, however, that Tempel's restitution should be reduced by the cost of renting equipment used on the Doe Project. *See* (Doc. 48-1 at 85.)

The Government rejected this reduction based on the lack of supporting documentation. (Doc. 49-1 at 892.) The Government also notes that William Tempel Construction's contract with Jane Doe did not contemplate rental or tool costs. (Doc. 49-1 at 891–892.)

Whether the contract encompassed rental fees presents a question better resolved in the ongoing civil dispute between Jane Doe and William Tempel Construction. Tempel's restitution amount must contain a causal nexus to her fraud. *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013). Restitution is "limited to the victim's actual losses that are a direct and proximate result of the defendant's offense." *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016). Jane Doe may not have bargained to pay the rental costs of the equipment Tempel lists, but she received their benefit nonetheless because William Tempel Construction used the equipment to build her home. The cost of renting the equipment cannot be considered a part of "the victim's actual losses" when its rental benefitted the victim. *Id.*

The amount of restitution should be reduced based on equipment rental fees, but the Court rejects Tempel's calculation of these fees. The rental costs that Tempel lists for each of these pieces of equipment appear reasonable based on the prices listed on other sites. *See How Much Does It Cost to Rent a Skid Steer?*, BIGRENTZ (Mar. 10, 2022), https://www.bigrentz.com/blog/how-much-does-it-

cost-to-rent-skid-steer (listing the price of skid steer rental as $2,000 to $4,000). In some cases, the cost per day that Tempel lists even appears to undervalue the rental price of equipment offered by other retailers. *See* HOME DEPOT, https://www.compactpowerrents.com/rental-equipment/trailers/5-x-8-dump-trailer-3-cu-yd/ (listing the daily rental price for a dump trailer as $97) (last accessed July 13, 2022).

Tempel's method for applying these prices, however, proves to be inscrutable. Tempel lists two date ranges for rental of the Dump Trailer, Ladder Trailer, and Tool Trailer. (Doc. 48-1 at 85.) Applying the rental cost provided by Tempel to the longer of these date ranges—September 2013 through December 2016—results in a price of approximately $42,595 for the dump trailer rental, far exceeding the $28,000 requested by Tempel. (*Id.*) Applying the cost to the shorter 20-day date range provided, however, results in only $700 in rental fees for the dump trailer. (*Id.*) The Court must determine an alternative method for calculating a reasonable amount by which to reduce Tempel's restitution as a result of her failure to support her own rental cost calculation.

The Court can only be sure of Jane Doe receiving the benefit of the rentals for periods in which the Doe Project constituted William Tempel Construction's only project. The FBI discovered fourteen other projects that William Tempel Construction invoiced during the same time period as the Doe Project. *See* (Doc.

50-1 at 590.) The FBI's timeline reveals, however, that there were several brief periods in which William Tempel Construction was only working on the Doe Project. (*Id.*) The lengthiest of these periods was from October 17, 2014, to June 17, 2016. (*Id.*) The Court reduces the time period listed in Tempel's restitution analysis to this 609-day period. The revised calculations credit Tempel $21,315 for the dump trailer, $21,315 for the ladder trailer, and $36,540 for the tool trailer.

The Court rejects the rental fees associated with the skid steer. (Doc. 48-1 at 85.) The Government points out that William Tempel purchased a skid steer on March 28, 2014, for $18,500 and sold the skid steer for $7,500 on February 28, 2018. (Doc. 49-1 at 892.) The Tempels had no reason to rent a skid steer during the 33-month period listed in Tempel's restitution analysis. (Doc. 48-1 at 85.) The Court reduces Tempel's restitution by the cost of purchasing the skid steer, less the money gained upon resale, for a total of $11,000. (Doc. 49-1 at 892.)

## CONCLUSION

Tempel's restitution shall be reduced by a total of $90,170 to reflect the benefit that Jane Doe received from equipment used by William Tempel Construction on the Doe Project. This change results in a revised restitution amount of $415,221.24.

## ORDER

Accordingly, **IT IS ORDERED** that the Judgment entered in this case shall require Tempel to pay $415,221.24 in restitution to Jane Doe.

Dated this 15th day of July, 2022

_____
Brian Morris, Chief District Judge
United States District Court